The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Roger L. Dillard, Jr. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer on May 12, 1994.
3. Defendant, Communication Cable, Inc., is a duly qualified self-insurer with Key Risk Management Services as its servicing agent.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. The claimant is a 36-year-old male who is a lifelong resident of Clay County. He is 6'4" tall and weighs approximately 195 pounds. He is separated [since the stipulated injury by accident] and has one child. After failing the tenth grade he quit high school at the age of 16. He has not obtained a GED and has had no specialized vocational training since leaving high school.
2. Mr. Guffey was employed by the defendant-employer for a period of approximately 14 years prior to the accident. During that period of time he had received a number of merit raises and worked in a number of different positions with the defendant-employer.
3. The jobs held by the plaintiff as well as most of the other jobs in the plant were very rigorous requiring considerable physical activity. Employees in the employer's plant are required to lift weights anywhere from 35 to 40 pounds routinely and sometimes must lift weights up to as much as 115 pounds.
4. The uncontradicted evidence was that the plaintiff was injured while lifting a spool of wire weighing approximately 115 pounds.
5. While there were allegations by employees of the defendant-employer that the employee was violating the safety procedures at the time of the accident, there was no mention made of said safety violations in the Form 19 in the employer's description of the accident.
6. Following the stipulated injury by accident on May 12, 1994, the employee was carried by ambulance to Murphy Medical Center. While in route he received an injection of pain killer and received another injection upon his arrival at Murphy Medical Center. He was x-rayed and examined by Dr. Walters and was released to his home with instructions to remain in bed for three days.
7. Pursuant to a policy worked out between the defendant-employer and Murphy Medical Center, a urine sample was obtained from Mr. Guffey just before he left Murphy Medical Center at approximately 1:00 p.m. The accident happened at approximately 10:30 a.m.
8. The testing of the sample allegedly taken from Tony Guffey and performed on or about 5-16-94 allegedly indicated a positive response to the testing for Cannabis. At some point Murphy Medical Center communicated the results of this positive drug screen to the defendant-employer. The defendant-employer became aware of this positive drug test and communicated the same to the plant manager, Robert Hogsed, and/or the vice president in charge of the plant, Steve Pane.
9. After being released for light duty by Dr. Spencer, Mr. Guffey reported for light duty with the defendant-employer on or about June 6, 1994 and was told to come back the next day. Subsequently, he developed additional back problems and was told by his then-treating physician, Dr. John Spencer, to delay his return to work. He was again authorized to return to work on or about June 9, 1994 and was told to come by on June 13, 1994 by Robert Hogsed. By June 9, 1994, the defendant-employer was aware of the positive drug screen but said nothing to the employee.
10. On June 13, 1994, Mr. Guffey reported for the light duty per his doctor's instructions and directions from Robert Hogsed, the plant manager. When he came in Mr. Hogsed advised him that he had tested positively on drug screen and that he was terminated.
11. Although there was evidence to the contrary from the defendant-employer's management personnel, the undersigned finds that at no time was Mr. Guffey advised that he was being discharged for anything other than a positive drug screen.
12. The plaintiff was never given an opportunity for drug rehabilitation although that is an option under the drug-free work place policy of the defendant-employer, introduced as defendant's Exhibit 1.
13. Upon being advised that he was being discharged for a positive drug test, the employee asked for a copy of the same from the defendant-employer but did not receive one.
14. There was never any showing of any medical necessity from any health care provider from Murphy Medical that justified the taking of a urinalysis from the plaintiff-employee on the day of the accident just prior to his discharge from Murphy Medical's emergency room.
15. The defendant-employer's drug policy indicates that having an on-the-job accident is "cause" for being required to submit to a drug screen; however, the employer made no credible showing of any behavior by Mr. Guffey that would justify any suspicion that his accident was in any way contributed to by the alleged presence of Cannabis in his urine. There has never been any claim by the employer and there is no evidence that the accident was caused or contributed to by any alleged drug use.
16. Mr. Guffey's request for a copy of the drug screen was denied for months by his employer. He was told by his supervisors to go get a copy of the drug screen from Murphy Medical Center.
17. When he went to Murphy Medical Center their agents also refused to provide him a copy of the drug screen.
18. On or about June 16, 1994 counsel for the plaintiff requested a copy of the positive drug screen, by certified letter, from the plant manager, Robert Hogsed. By letter dated June 17, 1994 counsel for the defendant-employer, Mr. McDaniel, responded to Mr. Harper's letter and again declined to provide a copy of the drug test or in any way advise the plaintiff of the drug screen.
19. The defendant-employer failed to provide the plaintiff-employee with the information necessary to validly exercise his rights under the Article 20 of Chapter 95 of the North Carolina General Statutes.
20. The defendant-employer's termination of the employment of the plaintiff-employee was arbitrary and was motivated in significant measure by the fact that the plaintiff had sustained an on-the-job injury.
21. The plaintiff's disability since the stipulated injury of May 12, 1994 is causally related to the stipulated injury by accident.
22. The plaintiff-employee was never given an opportunity to try light-duty employment. The defendant-employer has refused to provide light-duty employment for the plaintiff-employee although he was willing to attempt it.
23. The plaintiff-employee has had continuous back pain such that he has been unable to do his regular employment either with the defendant-employer or any other employment for which he was qualified by experience or education.
24. Susie Sharp, a rehabilitation nurse, was early assigned to manage Mr. Guffey's health care. She has been involved since on or about July 1, 1994. Mr. Guffey has been cooperative with the request made of him by Ms. Sharp who has managed the health care on behalf of the defendants.
25. Mr. Guffey has been rated by one physician, Dr. Peter Johnson, as retaining a 5 percent permanent partial impairment and Dr. Johnson also opined that he reached a maximum medical improvement on or about September 23, 1994.
26. On or about July 15, 1994 the plaintiff voluntarily had a urinalysis performed and that was negative for any illegal drugs. Despite testimony to the contrary, the defendant-employer and its carrier were made aware of the results of that voluntary drug test and refused to reconsider their earlier decision to terminate plaintiff-employee.
27. A preponderance of the credible evidence demonstrates that although the plaintiff was willing to try light-duty work when he reported to attempt work on June 9, 1994, he was disabled from even light-duty work on said date and that said disability continues to the present. The plaintiff has not returned to work at the same or a greater wage with the defendant-employer or any other employer.
28. The defendant-employer's drug policy creates an irrebuttable presumption of drug use (in Paragraph 4) contrary to the employee's right under the N.C.G.S. § 97-232(f) to have the allegedly positive sample retested. Moreover, the defendant-employer's drug policy totally fails to protect employees such as the plaintiff "from unreliable and inadequate examinations and screeninng for controlled substances."
29. The preponderance of the credible evidence indicates that prior to the stipulated injury by accident the plaintiff had an excellent work history with the defendant-employer. Prior to the accident, the claimant was never advised orally or in writing that there was a problem with his production or with his attitude. The only written documentation that any credence whatsoever to claims by supervisory personnel of the defendant-employer that the plaintiff's preaccident employment was less than satisfactory was a notation in January 1994 that he "needs to improve his housekeeping in production."
30. However, on March 27, 1994 the plaintiff was given a 10-cent per hour raise. The testimony from the employer was that this raise was, in fact, evidence of poor performance by the plaintiff. It is a rather bizarre and incredible position for an employer to take that it documents an employee reprimand by giving him a raise.
31. Following its entry into the Form 21 Agreement on June 10, 1994 [said agreement was approved on July 8, 1994], wherein it agreed to pay compensation for "necessary weeks," there was no evidence that the defendant-employer ever offered the plaintiff an opportunity to attempt a return to work at his former employment or any other employment with the defendant-employer.
32. Similarly, a preponderance of the credible evidence indicates that there was no suitable jobs available that the plaintiff was/is capable of obtaining and retaining, taking into account his pre-existing physical, mental and vocational limitations and his compensable injuries and resulting physical and mental impairments. Thus, defendant did not come forward as it must with persuasive evidence that plaintiff is capable of obtaining employment.
33. The plaintiff has been involved with multiple expensive efforts at rehabilitation such that he was unable to seek other employment as of the time of the hearing.
* * * * * * * * * * *
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Because this is a case of admitted liability, the plaintiff is entitled to a presumption of continuing disability until such time as he returns to work at the same or greater wage with this employer or another employer. Watkins v. Motor Lines, 279 N.C. 132, 181 S.E.2d 588
(1971); Radica v. Carolina Mills, 113 N.C. App. 440, 439 S.E.2d 185
(1994).
2. As a result of the stipulated injury by accident on May 12, 1994 and the injury and chronic pain and depression resulting therefrom, the plaintiff has been incapable of earning any wages with the defendant-employer or any other employer from May 12, 1994 to the present. N.C.G.S. § 97-29; Hilliard v. Apex CabinetCompany, 305 N.C. 593, 290 S.E.2d 682 (1982).
3. Plaintiff met his initial burden of proving disability by the expert medical testimony offered together with the testimony of the plaintiff and the rehabilitation nurse. Kennedyv. Duke University Medical Center, 101 N.C. App. 24,398 S.E.2d 677 (1990). In addition, disability is presumed to continue even though the plaintiff has reached maximum medical improvement.Watson v. Winston-Salem, North Carolina Transit Authority,92 N.C. App. 473, 374 S.E.2d 483 (1988).
4. Following its entry into the Form 21 Agreement on June 10, 1994 [said agreement was approved on July 8, 1994], wherein it agreed to pay compensation for "necessary weeks," there was no evidence that the defendant-employer ever offered the plaintiff an opportunity to attempt a return to work at his former employment or any other employment with the defendant-employer.
5. Similarly, a preponderance of the credible evidence indicates that there were no suitable jobs available that the plaintiff was/is capable of obtaining and retaining, taking into account his pre-existing physical, mental and vocational limitations and his compensable injuries and resulting physical, mental impairments. Thus, defendant did not come forward as it must with persuasive evidence that plaintiff is capable of obtaining employment. Kennedy v. Duke, supra.
6. The defendant-employer's termination of the employment of the plaintiff-employee was arbitrary and was motivated in significant measure by the fact that the plaintiff had sustained an on-the-job injury.
7. Although there was evidence that the plaintiff was physically capable of some work activity, due to the pre-existing conditions of the plaintiff's limited education, his functional illiteracy, and limited work experience, the compensable injuries and their attendant chronic pain and depression caused the plaintiff a greater degree of incapacity for work than the same injury might cause some other person with superior education or work experience or who had more intellectual capacity. N.C.G.S. § 97-29; Hilliard v. Apex Cabinet Company, 305 N.C. 593,290 S.E.2d 682 (1982).
8. As a result of the plaintiff's stipulated and adjudicated injuries by accident on February 26, 1988, and the chronic pain and depression resulting therefrom, plaintiff will require continuing monitoring and medical care in order to effect a cure, give relief or lessen plaintiff's period of disability. N.C.G.S. § 97-25; Little v. Penn Ventilator, 317 N.C. 206,345 S.E.2d 204 (1986); Hyler v. G.T.E. Products Co., 333 N.C. 258,425 S.E.2d 698 (1993).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. The defendant's request for permission to cut off benefits must be, and the same is hereby, DENIED.
2. Subject to the attorney's fee hereinafter awarded, the defendants shall continue paying total disability benefits to the plaintiff at the rate of $246.41 per week until he is able to return to work, or until the Commission shall otherwise authorize a cutoff or reduction of benefits.
3. Defendant shall pay all medical expenses incurred, or to be incurred by the plaintiff as a result of his compensable injuries sutained on May 12, 1994, and the chronic pain and depression resulting therefrom for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief, or will tend to lessen plaintiff's period of disability, when bills for the same shall have been submitted through the defendant self-insured to the Industrial Commission, and are approved by the Industrial Commission.
4. A reasonable attorney fee of twenty-five percent of the compensation due under Paragraph 2 of this Award is approved for plaintiff's counsel and shall be paid as follows: every fourth compensation check shall be deducted from the monies otherwise due the plaintiff and paid directly to plaintiff's counsel.
5. Plaintiff's shall pay the costs.
FOR THE FULL COMMISSION
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ________________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________________ WILLIAM L. HAIGH CHIEF DEPUTY COMMISSIONER
CMV/cnp/mj